# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DONNY L. STROMAN**

**CIVIL ACTION**

**V.**

**NO. 14-649-JWD-SCR**

**JASON ARD, ET AL**

## RULING AND ORDER

Before the Court is Defendant Jason Ard's Motion to Dismiss Pursuant to Rule 12(B)(6) (Doc. 12) and Re-Urged Motion to Dismiss Pursuant to Rule 12(B)(6). (Doc. 33). Plaintiff opposes the motion. (Doc. 37). The Court has jurisdiction pursuant to 28 U.S.C. § 1331. Oral argument is not necessary.

For the reasons set forth below, Defendant's motion is granted. However, Plaintiff is granted leave to amend his complaint within 30 days of this order. In the event that Plaintiff fails to file an amendment to his complaint within that time, his claims will be dismissed with prejudice.

## I. Relevant Factual and Procedural Background

### a. Introduction

This case arises out of Defendants Sheriff Jason Ard, Cade Blades, and Anthony Aguillard's alleged unlawful actions in violation of the United States Constitution. Donny L. Stroman ("Plaintiff"), an inmate of the Louisiana Department of Corrections, brought suit pursuant to 42 U.S.C. § 1983 claiming Defendants failed to provide adequate security and failed to provide adequate medical treatment. Defendant Sheriff Jason Ard is seeking to dismiss claims against him pursuant to Rule 12(b)(6).[1]

---

[1] Defendants Blades and Aguillard are not a party to the motion to dismiss.

### b. Procedural Background

Plaintiff filed his original Complaint (Doc. 1), to which Defendants Blades and Aguillard filed an answer (Doc. 11), and Defendant Ard filed a motion to dismiss (Doc. 12). Subsequently, Plaintiff filed an unopposed motion to file an amended complaint (Doc. 29), which was granted (Doc. 31). Plaintiff then filed his Amended Complaint (Doc. 32), to which Defendant Ard filed the present Re-Urged Motion to Dismiss. (Doc. 33).

As an initial matter, Plaintiff's Amended Complaint does not reference[2] or incorporate his original Complaint. Therefore, Plaintiff's Amended Complaint supersedes his original Complaint.[3] *King v. Dogan*, 31 F.3d 344, 346 (5th Cir.1994) (holding that an amended complaint supersedes an original complaint "unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading").

### c. Plaintiff's Allegations

Plaintiff alleges in his Amended Complaint that "[o]n or about October 10, 2013," he was "an inmate of the Department of Corrections of the State of Louisiana placed in the Livingston Parish Detention Center." (Doc. 32, p. 2 ¶ III(1)). Plaintiff claims that he was under the direct supervision of Defendants Blades and Aguillard. (Doc. 32, p. 3 ¶ III(2)). Plaintiff asserts that Defendants Aguillard and Blades "failed to provide adequate security, leading to [Plaintiff] being struck in the jaw by another inmate, which caused … serious permanent injury to his jaw." *Id.* at ¶ III(4). Plaintiff alleges that Defendants Ard, Blades, and Aguillard "each had a personal

---

[2] Plaintiff's Amended Complaint does make reference to Defendants Blades and Aguillard previously being named "Mr. Blades" and "Lt. Aguilar." (Doc. 32, p. 2). However, Plaintiff does not specifically refer to his original Complaint.

[3] There is a procedural question of whether an amended complaint moots any pending motion to dismiss. Courts have decided this issue in different ways. *See Melson v. Vista World Inc. and Assocs.*, CIV.A. 12-135, 2012 WL 6002680, at *12 n. 3-4 (E.D. La. Nov. 30, 2012) (aggregating cases). Here, as Defendant Ard re-urged his original motion to dismiss (Doc. 12) in a new motion (Doc. 33) and specifically addresses the new allegations raised by Plaintiff's Amended Complaint in his Memorandum in Support (Doc 33-2), the Court finds his motion is not moot.

responsibility to secure adequate and immediate medical care for [Plaintiff] who failed and refused to provide it." *Id.* at ¶ III(5).

Plaintiff asserts that "[o]n October 11, 2013, [Plaintiff] sought medical assistance from [Blades] and [Aguillard] but was refused." *Id.* at ¶ III(6). Plaintiff alleges that "[t]he failure to provide [Plaintiff] with adequate medical treatment led to further injury and continued pain and suffering from what turned out to be a broken jaw."

Further, Plaintiff alleges that "[t]he failure of Sheriff Ard to properly supervise the facility under his control … subjected [Plaintiff] to cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution." (Doc. 32, p. 4 ¶ III(8)). Plaintiff claims "[a]s a result of the actions described above, [Defendant Ard], in his individual capacity, and while acting under color of law … deprived [Plaintiff] of clearly established and well-settled constitutional rights." (Doc. 32, p. 5 ¶ III(13)). Plaintiff asserts that Defendant Ard, in his individual capacity, is "liable to [Plaintiff] under 42 U.S.C. § 1983 because of his policy, practice, pattern and custom of failing to provide adequate medical attention to inmates at Livingston Parish Detention Center, including [Plaintiff]" *Id.* at ¶ III(14). Plaintiff claims that this alleged "policy, practice, pattern and custom resulted in deliberate indifference to [Plaintiff's] serious and immediate medical needs in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution and was a driving force behind his suffering, injury and the constitutional violation." *Id.*

### d.  Present Motion

Defendant Sheriff Jason Ard ("Defendant") now seeks to dismiss Plaintiff claims against him pursuant to Rule 12(b)(6). Defendant challenges Plaintiff's allegations against him arguing that Plaintiff has failed to adequately state a claim against him because, among other reasons,

Plaintiff's allegations are conclusions of law that are unsupported by facts. (Doc. 33-2, p. 2). Defendant also raises several arguments related to, but not limited to, vicarious liability and qualified immunity. Plaintiff counters that he has made multiple factual allegations that are not conclusory. (Doc. 37, p. 2). The parties' arguments will be addressed below.

## II.   Rule 12(b)(6) Standard

In *Thompson v. City of Waco, Texas,* 764 F.3d 500 (5th Cir.2014), the Fifth Circuit recently summarized the Rule 12(b)(6) standard as thus:

> We accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff. We need not, however, accept the plaintiff's legal conclusions as true. To survive dismissal, a plaintiff must plead enough facts to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*4 *Id.* at 502–503 (internal citations and quotations omitted). The court's duty is "to determine whether the plaintiff stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Id.* at 503.

## III.   Discussion

### a.   Whether Plaintiff's Allegations are Conclusory

Defendant argues that Plaintiff's Amended Complaint "contains, at best, nothing more than a recitation of the elements of his claim against [Defendant] Ard, and it provides no factual allegations to support those allegations." (Doc. 33-2, p. 6). Defendant contends that Plaintiff "has pled nothing more than labels and conclusions that are not enhanced with any factual specificity." *Id.* Additionally, Defendant claims that "[a]ll statements made in [Plaintiff's] Amended complaint regarding Sheriff Ard are conclusions of law that are not entitled to a presumption of truth." *Id.*

4

Plaintiff counters that "[a]nyone reading the second amending complaint would rhetorically trip over the multiple factual allegations." (Doc. 37, p. 2). Plaintiff argues that he "doesn't have detailed evidence of some allegations. That, of course, is the point of discovery." *Id.* Plaintiff asserts that "has plead specific failure to train, mainly in emergency medical procedure, and in failing to properly train and provide adequate security so that no inmate is subject to the vicious act that felled [Plaintiff]." *Id.* Defendant responds by arguing that the Supreme Court "has made it very clear that [P]laintiff cannot open the door to discovery by making conclusory allegations in hopes that he can uncover facts supporting those allegations." (Doc. 38, p. 1).

After carefully reviewing the Plaintiff's Amended Complaint, for the reasons set forth below, the Court agrees with Defendant that Plaintiff has not pleaded sufficient facts to support his claims.

### b.  Vicarious Liability Under § 1983

Defendant Ard argues that he cannot be held vicariously liable under § 1983. (Doc. 33-2, p. 6-7). Defendant argues that even though "it is unclear whether [P]laintiff is attempting to plead any vicarious liability claims against Sheriff Ard," any such claim must be dismissed. (Doc. 33-2, p. 7). Plaintiff does not directly address this argument in his opposition.

Defendant is correct. "[S]upervisory officials cannot be held liable under section 1983 for the actions of subordinates ... on any theory of vicarious or *respondeat superior* liability." *Jackson v. E. Baton Rouge Par. Prison*, CIV.A. 14-45-JJB-RLB, 2014 WL 3193124, at *3 (M.D. La. July 8, 2014) (citing *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir.2005)); *see also Bd. of Cty. Com'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of *respondeat*

*superior*."). Thus, Defendant's motion is granted, and to the extent that Plaintiff intended to assert a claim of vicarious liability against Defendant Ard, such a claim is dismissed with prejudice.

### c. Claims Against Defendant Ard in his Official Capacity

Plaintiff has alleged claims against Defendant Ard in his official capacity as sheriff of Livingston Parrish. The Supreme Court outlined in *Kentucky v. Graham:*

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

473 U.S. 159, 165–66 (1985) (citations omitted).

Further, this Court has previously explained:

> "A local government entity may be sued 'if it is alleged to have caused a constitutional tort through a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.' " *Zarnow v. City of Wichita Falls,* 614 F.3d 161, 166 (5th Cir.2010) (quoting *City of St. Louis v. Praprotnik,* 485 U.S. 112, 121 (1988)) (internal quotation marks omitted). To impose liability upon Defendant … in his official capacity … the Plaintiff[] must establish three elements: "a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Id.* (quoting *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir.2001)) (internal quotation marks omitted).

*Norton v. Livingston Par. Detention Ctr.*, CIV.A. 13-437-JJB, 2013 WL 5519400, at *4 (M.D. La. Oct. 2, 2013) *order clarified on other grounds,* CIV.A. 13-437-JJB, 2014 WL 1057218 (M.D. La. Mar. 19, 2014).

Defendant argues that Plaintiff has failed to establish the second element - that there was "an official policy."[4] (Doc. 33-2, p. 8). An "official policy" is:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Norton*, 2013 WL 5519400 at *4 (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.1984)).

Defendant claims that Plaintiff has not alleged "that Sheriff Ard adopted and promulgated an official policy statement, ordinance, regulation, or decision regarding medical care of supervision at the detention center that caused the constitutional violations alleged that would be sufficient to satisfy the first type of '[official] policy[.]' " (Doc. 33-2, p. 8-9). Defendant further asserts that Plaintiff has not "alleged any facts to support a finding that a widespread practice or custom caused a constitutional violation." (Doc. 33-2, p. 9).

Plaintiff does not directly counter Defendant's arguments. Rather, Plaintiff argues somewhat broadly that he "meticulous[ly] alleged facts related to his original injury and to his

---

[4] Defendant does not address the first or third elements. Thus, the Court limits its analysis to the second element.

7

failure to received adequate medical care, and alleged items specific enough to give rise to a specific claim for damages." (Doc. 37, p. 4). The Court is not persuaded.

*Norton* was a similar suit against the Livingston Parish Sheriff, and the plaintiffs there made numerous allegations similar to the case at bar. *See Norton*, 2013 WL 5519400 at *4-5. After reviewing the plaintiffs' allegations, this Court explained:

> Plaintiffs fail to provide factual allegations regarding any "official policy" which would potentially subject Defendant Ard, in his official capacity, to liability under 42 U.S.C. § 1983. An "official policy" can either be an officially-adopted policy statement, ordinance, regulation or decision; or a widespread practice that is so common as to constitute a custom…. However, Plaintiffs provide the conclusory allegation that Defendant Ard, in his official capacity, "showed deliberate indifference, in [his] implementation of policies and procedures regarding the treatment of ... Darrin Norton and deprived Darrin Norton minimal civilized measures of life's necessities." (Doc. 15, p. 15, ¶ 75). There are no factual allegations as to what this alleged policy was or what it involved. Plaintiffs also aver that "decisions made regarding policies for the protection of inmate physical safety, and the medical and psychiatric policies by the Livingston Parish Sheriff, in his official capacity, ... directly affected Darrin Norton's ability to be safe from physical abuse, and medical and psychiatric indifference and abuse." (Doc. 15, p. 11, ¶ 66). Again, there is no factual allegation as to what these policies and procedures were, and whether or not they constituted an "official policy" so as to hold Defendant Ard liable in his official capacity. Throughout the rest of the amended complaint, Plaintiffs simply refer to the "policy" and "custom" at the Livingston Parish Detention Center, yet, never make a single factual allegation as to what that custom or policy entailed. Emblematic of the overall problem, Plaintiffs make the conclusory statement in their amended complaint that "[t]he policy was so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violations to Darrin Norton and resulted in the death of Darrin Norton" and "[t]he official custom, policy, and procedure related to hiring or training of these individuals resulted in the death of Darrin Norton." (Doc. 15, p. 15–16, ¶¶ 76–77). This is a situation where Plaintiffs are merely making conclusory allegations that effectively amount to a formulaic recitation of the elements of their 42 U.S.C. § 1983 cause of action. *See Twombly,* 550 U.S. at 555.

*Id.* at *5.

Here, similarly, the Court finds that Plaintiff has not provided facts to support his allegations regarding an "official policy." Plaintiff alleges that "Sheriff Ard … has tolerated patterns and practices of intentional actions and inactions, unjustified and unreasonable misconduct and/or has acted with a deliberate indifference in a pattern so widespread that it may be considered the unofficial custom or policy of said defendant to engage in the misconduct in question…." (Doc. 32, pp. 6-7 ¶ III(17)).

There are several problems with this allegation. First, Plaintiff has not alleged any facts to show an officially adopted policy. Second, Plaintiff has pleaded no facts to support his allegation that there is an unofficial custom.  As in *Norton*, Plaintiff has not stated what the alleged pattern or practice entails.

The event in question in this case appears to be the alleged altercation between Plaintiff and another inmate, allegedly as the result of Defendants Blades and Aguillard's failure to provide adequate security, which resulted in a broken jaw. Plaintiff has further claimed that Defendants Blades and Aguillard refused his request for medical attention.

However, Plaintiff's factual allegations concerning the altercation and refusal to provide medical care are not enough to support a claim that Defendant Ard has acted "in a pattern so widespread that it may be considered the unofficial custom or policy of [Defendant] to engage in the misconduct in question…." (Doc. 32, pp. 6-7 ¶ III(17)). Plaintiff has not asserted any factual "pattern" on the part of Defendant Ard; rather, Plaintiff appears to be claiming that the alleged "misconduct in question," the altercation and refusal to provide medical care, establish the basis for such a claim.

The Fifth Circuit has "consistently held ... that '[a]llegations of an isolated incident are not sufficient to show the existence of a custom or policy.' " *Mathews v. Bowie Cty., Tex.*, 600 F.

9

App'x. 933, 934 (5th Cir. 2015) (unpublished) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir.1992)). This is because "[i]solated violations are not the persistent, often repeated constant violations that constitute custom and policy." *Fraire*, 957 F.2d at 1278 (5th Cir. 1992) (citing *Bennett v. City of Slidell*, 728 F.2d 762, 768 n. 3 (5th Cir.1984), *cert. denied*, 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985)). However, "a single decision by a policy maker may, under certain circumstances, constitute a policy for which [a municipality] may be liable." *Brown v. Bryan Cty.*, 219 F.3d 450, 462 (5th Cir. 2000). Even so, the single incident exception "is a narrow one, and one that [the Fifth Circuit has] been reluctant to expand." *Burge v. St. Tammany Par.*, 336 F.3d 363, 373 (5th Cir. 2003).

This Court has previously explained the narrow single incident exception from *Brown* as thus:

> In Brown, the Fifth Circuit found the single incident exception to apply when there was an utter failure to train and supervise. *Brown v. Bryan County, Okla.*, 219 F.3d 450, 462 (5th Cir. 2000). The Fifth Circuit later stated in *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273 (5th Cir. 2002), that the single incident exception applied in Brown because the county in that case "failed to provide any training or supervision for a young, inexperienced officer with a record of recklessness." *Cozzo*, 279 F.3d at 288 (internal quotation marks and citations omitted). The court also noted that "there is a difference between a complete failure to train as in [Brown] and a failure to train in one limited area."

*Bibbins v. City of Baton Rouge*, 489 F. Supp. 2d 562, 584 (M.D. La. 2007).

Here, Plaintiff's conclusory allegation that Defendant had an unofficial custom or policy in place, without factual support, "effectively amount[s] to a formulaic recitation of the elements of [his] 42 U.S.C. § 1983 cause of action." *See Norton*, 2013 WL 5519400 at *5 (citing *Twombly,* 550 U.S. at 555). As explained by the Fifth Circuit, "[t]he description of a policy or custom and its relationship to the underlying constitutional violation … cannot be conclusory; *it*

*must contain specific facts.*" *Spiller v. City of Texas City, Police Dept.*, 130 F.3d 162, 167 (5th Cir. 1997) (emphasis added) (citing *Fraire v. Arlington*, 957 F.2d 1268, 1278 (5th Cir.1992)).

Accordingly, because Plaintiff has made no factual allegations as to what the Defendant's policy was, and has made no factual allegations sufficient to show a custom, Plaintiff's claim against Defendant Ard in his official capacity must be dismissed. However, as the Court has not previous ruled on Defendant's motion to dismiss and the Court finds that an amendment may not be futile. Thus, Plaintiff is given leave to amend his complaint.

### d.  Claims Against Defendant Ard in his Individual Capacity

Here, Defendant challenges Plaintiff's allegations against him in his individual capacity. Defendant also argues that Plaintiff has only pleaded conclusory allegations with no factual support. (Doc. 33-2, p. 14-16). Plaintiff, again, does not directly address Defendant's arguments.

Further, Defendant argues that he is entitled to qualified immunity for claims against him in his individual capacity. (Doc. 33-2, p. 16). Plaintiff argues that "qualified immunity is an affirmative defense and should be pled separately," and that "[i]t will probably take discovery … to determine the facts alleged concerning qualified immunity." (Doc. 37, p. 4). Defendant counters that "qualified immunity claims should occur 'at the earliest possible state in litigation.' " (Doc. 38, p. 2) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002)).

### i.  Qualified Immunity

Here, the Court agrees with Defendant. As recently as 2012, the Fifth Circuit has explained that "qualified immunity should be adjudicated 'at the earliest possible stage in litigation,' but 'if the issue is not decided until trial the defense goes to the jury which must then determine the objective legal reasonableness of the officers' conduct.' " *Waganfeald v. Gusman*,

674 F.3d 475, 483-84 (5th Cir. 2012). Thus, unlike Plaintiff's argument, it is appropriate to determine qualified immunity on a motion to dismiss.

As this Court has previously explained:

> Plaintiffs' § 1983 claims seeking damages from a defendant in his individual capacity are subject to the affirmative defense of qualified immunity. *Club Retro, L.L.C. v. Hilton,* 568 F.3d 181, 194 (5th Cir.2009). When a defendant … invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *Id.* (citing *McClendon v. City of Columbia,* 305 F.3d 314, 323 (5th Cir.2002) (en banc)).
>
> To demonstrate this, the Plaintiffs must satisfy a two-part test. *Id.* (citation omitted). "First, [they] must claim that the defendants committed a constitutional violation under current law." *Id.* (citation omitted). "Second, [they] must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id.* (citation omitted). *Schultea v. Wood,* 47 F.3d 1427, 1434 (5th Cir.1995) (en banc). "When greater detail is required to address the defense of qualified immunity, the Court may insist that a plaintiff file a reply pursuant to Federal Rule of Civil Procedure 7(a) tailored to an answer pleading the defense of qualified immunity." *Clayton v. Columbia Cas. Co.,* No. 11845, 2012 WL 2952531, at *3 (M.D.La. July 19, 2012) (citing *Schultea v. Wood,* 47 F.3d 1427, 1433–34 (5th Cir.1995) (en banc)).

*Bouchereau v. Gautreaux*, CV 14-805-JWD-SCR, 2015 WL 5321285, at *4 (M.D. La. Sept. 11, 2015).

### ii.  Defendant Ard's Alleged Deprivation of Plaintiff's Rights

Plaintiff has alleged that Defendant Ard has failed to properly supervise the detention center, and that he has tolerated a practice of failing to provide adequate medical care. Additionally, Plaintiff has alleged that Defendant Ard "knew or should have know that potentially serious consequences could be suffered by [Plaintiff] as a result of ... his failure to properly train and supervise jail personnel, supervise and timely seek medical care, or develop adequate policies regarding medical care." (Doc. 32, p. 7 ¶ 18).

12

This Court has previously explained:

> To prevail on a Section 1983 claim, it must be proven that a person acting under color of state law deprived the plaintiff of a right secured by the Constitution or the laws of the United States. *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49 (1999). Such constitutional violations should be specified by the plaintiff, and plaintiff is required to file a short and plain statement of his complaint, a statement that rests on more than conclusions alone. *Schultea v. Wood,* 47 F.3d 1427, 1433 (5th Cir.1995). Plaintiff must also prove that the alleged constitutional or statutory deprivation was intentional or due to deliberate indifference and not the result of mere negligence. *See Farmer v. Brennan,* 511 U.S. 825, 828 (1994). Moreover, in a claim asserted under Section 1983 "[a] plaintiff must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation." *James v. Texas Collin County,* 535 F.3d 365, 373 (5th Cir.2008) (citing *Anderson v. Pasadena Indep. Sch. Dist.,* 184 F.3d 439, 443 (5th Cir.1999).

*Washington v. Louisiana*, CIV.A. 11-00334-BAJ, 2013 WL 5460331, at *4-5 (M.D. La. Sept. 30, 2013), *appeal dismissed* (May 15, 2014) (paragraph break omitted).

Here, after reviewing Plaintiff's Complaint, the Court finds, similar to above, that Plaintiff's allegations against Defendant Ard in his individual capacity have no factual support. Plaintiff has not alleged that Defendant Ard was personally involved in the altercation and refusal to provide medical treatment. Rather, Plaintiff specifically alleges that Defendants Blades and Aguillard were involved.

Further, with respect to any causal connection to the alleged incident, Plaintiff has not alleged how Defendant Ard was causally connected to the alleged refusal to provide medical treatment. Nor has Plaintiff alleged any factual basis for his assertion that Defendant Ard failed to supervise his deputies. Plaintiff broadly asserts that Defendnat Ard is liable, but provides no factual support for such a claim. Plaintiff's allegations against Defendant Ard in his individual capacity "effectively amount[s] to a formulaic recitation of the elements of [his] 42 U.S.C. § 1983 cause of action." *See Norton*, 2013 WL 5519400 at *5.

13

Accordingly, Plaintiff's allegations fail to show that Defendant Ard committed a constitutional violation under current law. Thus, his claims fail the first prong of the two-part qualified immunity test. As such, the Court need not determine whether Defendant Ard's actions were objectively unreasonable. Therefore, Plaintiff's claims must be dismissed.

However, in *Schultea*, the Fifth Circuit outlined a two-step process for district courts when addressing a qualified immunity defense:

> First, the district court must insist that a plaintiff suing a public official under § 1983 file a short and plain statement of his complaint, a statement that rests on more than conclusions alone. Second, the court may, in its discretion, insist that a plaintiff file a reply tailored to an answer pleading the defense of qualified immunity. Vindicating the immunity doctrine will ordinarily require such a reply, and a district court's discretion not to do so is narrow indeed when greater detail might assist....

*Schultea*, 47 F.3d at 1433-34.

"[T]his two-step process-requiring the plaintiff to file a short and plain statement of his claim pursuant to Rule 8(a)(2) followed by a more particularized reply pursuant to Rule 7-is the preferred procedure preceding consideration of a motion to dismiss on grounds of qualified immunity." *Todd v. Hawk*, 72 F.3d 443, 446 (5th Cir. 1995).

Here, as explained above, Plaintiff's allegations rest on conclusions that recite the elements of his claim. However, Plaintiff has also argued that "[i]t will probably take discovery … to determine the facts alleged concerning qualified immunity." (Doc. 37, p. 4). The Court is not persuaded.

As this Court has previously explained:

> While the Fifth Circuit has acknowledged that a plaintiff is not required to "plead facts 'peculiarly within the knowledge of defendants,' " *Morgan v. Hubert*, No. 08–30388, 2009 WL 1884605, at *5 (5th Cir. July 1, 2009) (unpublished) (quoting *Schultea*, 47 F.3d at 1432), it has cautioned that in order to permit discovery on a plaintiff's claim against a supervisory official, "the

> pleadings must have sufficient precision and factual detail to reveal that more than guesswork is behind the allegation." *Floyd v. City of Kenner,* No. 08–306378, 2009 WL 3490278, at *6–*9 (5th Cir. Oct 29, 2009) (unpublished) (citing *Schultea,* 47 F.3d at 1434) (distinguishing *Morgan* and holding that allegations amounting to nothing more than speculation with respect to a supervisory official's participation in a constitutional violation did not "fall[ ] squarely within the kind of case justifying limited discovery....").

*Clayton v. Columbia Cas. Co.*, CIV.A. 11-845, 2012 WL 2952531, at *7 (M.D. La. July 19, 2012).

Further, the Fifth Circuit has explained:

> There has to be more underlying a complaint than a hope that events happened in a certain way. Instead, in the "short and plain" claim against a public official, "a plaintiff must at least chart a factual path to the defeat of the defendant's immunity, free of conclusion." *Schultea,* 47 F.3d at 1430. Once that path has been charted with something more than conclusory statements, limited discovery might be allowed to fill in the remaining detail necessary to comply with *Schultea*.

*Floyd*, 351 F. App'x. at 898. *See also Clayton*, 2012 WL 2952531, at *7; *Loupe v. O'Bannon*, CIV.A. 14-00573-BAJ, 2015 WL 2383858, at *4 (M.D. La. May 19, 2015).

Here, as explained above, Plaintiff has failed to chart a factual path with something more than conclusory statements. *See Id.* As such, the Court rejects Plaintiff's argument that discovery is needed to determine the facts concerning qualified immunity.

Therefore, in accordance with *Schultea*, and because the Court has not previously granted Plaintiff leave to amend his complaint, the Court grants Plaintiff leave to amend his complaint against Defendant Ard in his individual capacity to "file a short and plain statement of his complaint … that rests on more than conclusions alone." *See Schultea*, 47 F.3d at 1433.

## IV.   Conclusion

Accordingly, **IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 12) and Re-Urged Motion to Dismiss (Doc. 33) are **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's § 1983 claims against Defendant Ard are **DISMISSED WITH PREJUDICE** to the extent they rely on a theory of *respondeat superior*;

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendant Ard in his official and individual capacity are **DISMISSED WITHOUT PREJUDICE**;

**IT IS FURTHER ORDERED** that Plaintiff will file within 30 days of this order an amended complaint, if he can do so, with respect to his § 1983 claims against Defendant Ard in his official and individual capacity.

**IT IS FURTHER ORDERED** that, in the event that Plaintiff fails to file an amendment to his complaint within that time, his claims will be dismissed with prejudice.

Signed in Baton Rouge, Louisiana, on <u>November 2, 2015</u>.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

16